IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER GILMORE,

      Plaintiff,

      v.                                CASE NO.  23-3113-JWL

VITAL CORE, LLC, et al.,

      Defendants.

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff Christopher Gilmore is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I.  Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is in custody at the Sedgwick County Adult Detention Facility in Wichita, Kansas ("SCADF").  The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff alleges that he was prescribed to have breathing treatments from 2009 to around August or September of 2022, when many detainees were removed from chronic-care treatments. (Doc. 1, at 4.)  Plaintiff alleges that dating back to 2012, he has always been prescribed and supplied with "quality denture adhesives."  *Id*.

Plaintiff alleges that on December 2, 2022, he reported breathing problems to a Pod 1 deputy.  In response, Deputy Neph was dispatched to transport Plaintiff to the clinic for medical care and a breathing treatment.  Plaintiff alleges that Nurse Anna denied Plaintiff a breathing treatment, refused to perform any medical assessments, and walked away.

Plaintiff alleges that Deputy Neph handcuffed and escorted Plaintiff to the clinic and then "assaulted and battered" Plaintiff while leaving the clinic.  Plaintiff alleges that he was escorted and left at Cell 1–04 "suffocating in [his] anxiety."  (Doc. 1, at 3.)  Plaintiff alleges that he "suffered(s) physical injuries."  *Id*.  Plaintiff alleges that Vital Core, Dr. DeMarco and Jennifer have a policy and practice of failure to train to prevent deliberate indifference and denial of medical care.  *Id*.

Plaintiff alleges as Count I the denial of medical care and treatment in violation of the Fourteenth Amendment.  As Count II, Plaintiff alleges assault and battery by Deputy Neph.  As Count III, Plaintiff alleges a state law claim for intentional infliction of emotional distress.  Plaintiff alleges a failure to train by Vital Core as Count IV.

Plaintiff names as defendants: Vital Core, LLC; (fnu) DeMarco, Vital Core Doctor; Jennifer (lnu), Vital Core Health Care Provider; Anna (lnu), Vital Core evening nurse; and (fnu) Neph, Detention Deputy at the SCADF.   Plaintiff seeks compensatory damages for "mental anguish, distress, for violation of civil rights and physical assault victimization" and $1 million in punitive damages against Vital Core.  *Id*. at 8.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

3

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Excessive Force

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). Claims of mistreatment while in state pretrial confinement are not covered by the Fourth Amendment or the Eighth Amendment. *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). They are assessed under the Fourteenth Amendment. *Id*.

The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged

governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015)); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").

Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

In *Snyder v. Spilde*, the District Court of Colorado considered an incident similar to the one upon which Plaintiff's claim is based and found as follows:

> Merely grabbing and twisting Mr. Snyder's arms does not allege a constitutional violation. *See e.g., Norton v. The City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (dismissing claim in which prison guards were alleged to have injured prisoner by grabbing him around his neck and twisting it because the guards' actions were not objectively harmful enough to establish a constitutional violation); *Reed v. Smith*, No. 97-6341, 1999 WL 345492, at *4 (10th Cir. 1999) (dismissing excessive force claim based on allegations that prison officials grabbed inmate, tried to ram him into a wall, and dragged him while walking him through the prison); *Marshall*, 415 Fed. App'x at 853–54 (dismissing excessive force claim based on allegations that corrections officer dug his fingernails into prisoner's arm without cause to do so resulting in redness and bruising). *Accord De Walt v. Carter*, 224 F.3d 607, 610–11 (7th Cir. 2000) (holding that shoving a prisoner into a doorframe, which resulted in bruising on his back, did not state a constitutional violation); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that bumping, grabbing, elbowing, and pushing a prisoner was "not sufficiently serious or harmful to reach constitutional dimensions."); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (pushing cubicle-cell wall onto prisoner's leg, causing bruises, was insufficient use of force to state a

> constitutional violation); *Olson v. Coleman*, 804 F. Supp. 148, 149–50 (D. Kan. 1982) (single blow to prisoner's head while escorting him into prison, causing contusion, was de minimis use of force not repugnant to conscience of mankind).

*Snyder v. Spilde*, No. 15-cv-2169-GPG, 2016 WL 1059612, at *3–4 (D. Colo. March 17, 2016).

## 2. Medical Care

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). "[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies). To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted). The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

### 3.  Vital Core

In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted).  A corporation may not be held liable based upon respondeat superior because "vicarious liability is inapplicable to  . . . § 1983 suits." *Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.'") (citation omitted); *Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL 2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct*

*Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008) (stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation.").

"[A] failure-to-train claim may not be maintained . . . without a showing of a constitutional violation by the allegedly un-, under-, or improperly-trained officer." *Valdez v. Macdonald*, --- F.4th ---, 2023 WL 3051270, a n.14 (10th Cir. April 24, 2023) (citations omitted); *see also Estate of Burgaz v. Bd. of Cty. Comm'rs*, 30 F.4th 1181, 1189 (10th Cir. 2022) ("[T]o be held liable for either a failure-to-train or failure-to-supervise claim, an individual officer (or deputy) must have committed a constitutional violation.") (citations omitted); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) (stating that "failure to train claims, like their basic excessive force claim against the individual officers, requires a predicate showing that the officers did in fact use excessive force").

### 4. Prior Case

Plaintiff has raised claims regarding the December 2, 2022 incident in a prior case.  In *Gilmore v. Neph*, the Court found that:

> Plaintiff alleges that he was assaulted by Deputy Neph on December 2, 2022, at the SCJ medical clinic. Neph was escorting Plaintiff to the clinic because Plaintiff was having breathing issues due to ineffective denture adhesive. Plaintiff had his hands cuffed behind his back and was holding his dentures in his hands. Plaintiff avers that Neph "began threatening Plaintiff with more segregation or charges because [of] this Plaintiff's prior accusations against other staff in other incidents." Doc. 1, at 6. Plaintiff responded by telling Neph that "his name would be added to Federal Lawsuits for abuse of confined person and deliberate indifference." *Id.*
> When they arrived at the clinic, the nurse on duty refused to discuss the issue of denture adhesive with Plaintiff, and Neph began attempting wristlock/armbar submission holds on Plaintiff for some reason. When that failed, he tried to dislodge the false

teeth from Plaintiff's hands. When he was unsuccessful, he put his hands around Plaintiff's throat and began to choke him. "Seconds later," Deputy Cadet intervened and stopped Neph. *Id*. at 7. Plaintiff was escorted back to his cell, the cuffs were removed, and Plaintiff told Cadet he wanted to "file Felony Assault charges" against Neph. *Id*.

According to Plaintiff, Neph claims Plaintiff grabbed his hands while he was struggling to put Plaintiff in handcuffs. Plaintiff states this is a lie because he had cuffs on from the time he left his cell at 8:50 p.m. until he was returned to his cell at 9:05 p.m. *Id*.

Plaintiff states that he suffered pain "from injuries" but does not describe any injury. *Id*.

\* \* \* \*

Plaintiff alleges that in August of 2022, the "Sheriff's Department" created an administrative policy preventing him from receiving a tube of "quality" denture adhesive (Plaintiff prefers Fixodent) twice a month at $5.00 per tube. The policy was directed at products containing petroleum, which apparently could be used to "melt" windows at the SCJ. The SCJ or Vital Core provides Plaintiff with denture adhesive that does not work as well as Fixodent. Vital Core told him either Fixodent was unavailable or cost too much. He asserts that the lack of preferred adhesive has caused him "continuous and ongoing physical pain, injury, and severe choking and breathing problems." *Id*. at 25.

*Gilmore v. Neph*, Case No. 22-3316-JWL, Doc. 8, at 1–4 (D. Kan. Feb. 7, 2023). The Court also noted that after video of the incident was reviewed, Plaintiff received disciplinary reports for battery on Neph. *Id*. at 2.

The Court found that Plaintiff's excessive force claim against Neph was subject to dismissal for failure to state a claim, and that Plaintiff failed to describe any physical injury. *Id*. at 8. The Court also found that Plaintiff failed to state an Eighth Amendment claim where he:

states no facts suggesting that Fixodent is a basic human need or that the lack of his choice of denture adhesive has caused, or is likely to cause, him any serious physical harm. He mentions breathing difficulties and choking hazard but only in a conclusory manner. He does not allege that a medical professional has determined that he has a serious medical need for his preferred

denture adhesive. Furthermore, without any allegations suggesting that a doctor has diagnosed Plaintiff with a medical need for Fixodent, the Court cannot find that any defendant knew preventing him from obtaining this product posed an excessive risk of harm to his health. For the stated reasons, the Court concludes that Plaintiff has not presented sufficient factual matter in his Complaint to state an Eighth Amendment claim.

*Id.* at 14.

Plaintiff responded to the Court's order in *Gilmore v. Neph*, and also filed an amended complaint. The Court dismissed Plaintiff's claims in his amended complaint ("AC") for failure to state a claim, finding that:

Plaintiff alleges that he was assaulted by Deputy Neph on December 2, 2022, at the Sedgwick County Jail ("SCJ") medical clinic. Neph was escorting Plaintiff to the clinic because Plaintiff was having breathing issues due to ineffective denture adhesive. Plaintiff had his hands cuffed behind his back and was holding his dentures in his hands. Plaintiff avers that Neph said that if the clinic visit was about denture issues, he would be locking Plaintiff down with more segregation time. Doc. 12, at 17. Plaintiff responded that the visit was related to issues with breathing due to "prosthetic device deprivation." *Id.* at 18. According to the AC, Plaintiff and Neph engaged in a verbal altercation all the way to the clinic. Eventually, Plaintiff tells Neph that "his name would be added to a Federal lawsuit for violating rights and deliberate indifference." *Id.* at 19.

When they arrived at the clinic, the nurse on duty refused to discuss the issue of denture adhesive again with Plaintiff, and Neph began attempting to jerk Plaintiff by grabbing onto his right elbow and forearm. *Id.* He then attempted a wristlock/armbar and finger bending. Plaintiff alleges that Neph became "so enraged by his failure to place this plaintiff into a submission or other pain inflicting position, and he also fail[ed] to dislodge false teeth from [Plaintiff's] hands, that he [lost] self control and slam[med] his hand(s) around [Plaintiff's] neck and attempt[ed] to choke [him] against the wall." *Id.* at 20. "After a few seconds," Deputy Cadet intervened and stopped Neph. *Id.* Plaintiff was escorted back to his cell, the cuffs were removed, and Plaintiff told Cadet he wanted to file "Felony Aggravated Battery charges" against Neph. *Id.*

According to Plaintiff, Neph claims Plaintiff assaulted him by grabbing his hands while Plaintiff was being handcuffed at the clinic. *Id.* at 21. Plaintiff states this is false because he had cuffs on

from the time he left his cell at 8:50 p.m. until he was returned to his cell at 9:03 p.m. *Id.*

Plaintiff alleges that he has "stiffness" in his right wrist and stiffness and pain in his neck, and jaw area, as well as "persistent headaches" as a result of the incident. *Id.* at 23.

\* \* \* \*

Plaintiff alleges that from November 27, 2022 through February 1, 2023, he was refused denture adhesive that actually worked. On February 2, Plaintiff met with Vital Core staff, and they agreed to provide him with generic Fixodent. He alleges that he "endured injury and breathing difficulties and several serious events of choking on food" while forced to use the adhesive initially provided to him by Vital Core. *Id.* at 37. Plaintiff asserts that several other inmates experienced the same problems with the inferior adhesive.

*Id.* at Doc. 13, at 1–3.

The Court in *Gilmore v. Neph* found that Plaintiff's amended complaint failed to state a claim of excessive force against Neph. *Id.* at 7 ("While the conduct described by Plaintiff is far from commendable, it does not rise to the level of a constitutional violation.").  The Court also found that Plaintiff failed to state a claim for relief regarding his preferred denture adhesive. *Id.* at 12–13 ("He does not allege that a medical professional has determined that he has a serious medical need for his preferred denture adhesive . . . [and] without any allegations suggesting that a doctor has diagnosed Plaintiff with a medical need for Fixodent, the Court cannot find that any defendant knew preventing him from obtaining this product posed an excessive risk of harm to his health.").  The Court found that Plaintiff failed to satisfy either facet of an Eighth Amendment claim, he stated no facts suggesting that Fixodent is a basic human need or that the lack of his choice of denture adhesive caused, or was likely to cause, him any serious physical harm.  *Id.* at 12.  The Court noted that Plaintiff "mentions breathing difficulties and choking hazard but only in a conclusory manner." *Id.*

11

The Court also found that Plaintiff's claims of Aggravated Battery and Mistreatment of a Confined Person were based on criminal statutes "and are not enforceable through a civil lawsuit." *Id*. at 13.

**5. Conclusion**

The Court likewise finds that Plaintiff's Complaint in the instant case fails to state a claim for relief. The Court has already found that Neph's actions during the incident did not rise to the level of a constitutional violation. Nothing in Plaintiff's current Complaint changes that analysis. Plaintiff has not alleged wrongdoing that is objectively harmful enough to establish a constitutional violation based on excessive force.

The Court also found that Plaintiff's claims regarding his preferred denture cream failed to state a claim regarding his medical care. Plaintiff was denied a breathing treatment when he was escorted to the clinic to complain that he could not breathe properly without his preferred denture cream. The denial of a breathing treatment under these circumstances does not show deliberate indifference by the medical staff. Plaintiff has failed to show that any defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.

Plaintiff's failure to train claim also fails because he has not alleged sufficient facts to show a constitutional violation by an employee or a policy causally connected to such a violation.

As Plaintiff was advised in his prior case, his claim for assault and battery is not cognizable in a civil action. Regarding Plaintiff's claim of intentional infliction of emotional distress, the Court finds that it is well-settled that state law violations are not grounds for relief under § 1983. "[A] violation of state law alone does not give rise to a federal cause of action

under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (citation omitted). This Court is not obliged to exercise supplemental jurisdiction over any state law claims, even if valid, given that Plaintiff's federal constitutional claims are subject to dismissal. *See* 28 U.S.C. § 1367(c)(3).

The Court also cautions Plaintiff that "[r]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." *Winkle v. Hammond*, 601 F. App'x 754, 754–55 (10th Cir. 2015) (quoting *McWilliams v. State of Colo.,* 121 F.3d 573, 574 (10th Cir. 1997) (internal quotation marks and brackets omitted)); *see also Davis v. Bacon*, 234 F. App'x 872, 874 (10th Cir. 2007) (dismissing as frivolous a complaint that "substantially mirrors" a prior complaint that was dismissed).

## IV.  Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this case without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **May 30, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated May 2, 2023, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**