IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER GILMORE,

    **Plaintiff,**

    v.                                                        CASE NO. 23-3113-JWL

VITAL CORE, LLC, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Sedgwick County Adult Detention Facility in Wichita, Kansas ("SCADF"). The Court granted Plaintiff leave to proceed in forma pauperis. On May 2, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 4) ("MOSC") granting Plaintiff until May 30, 2023, in which to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC. The Court granted Plaintiff an extension of time to June 30, 2023, to respond to the MOSC and to show good cause why his Complaint should not be dismissed. (Doc. 7.) This matter is before the Court on Plaintiff's response (Docs. 8, 9). Plaintiff has also filed a Motion for Court Ordered Competency Evaluation (Doc. 14) and a "Motion, Response, and Supplemental Addendum and Motion for Equitable Sanctions/Transport Order" (Doc. 15).

**I. Nature of the Matter Before the Court**

The underlying facts and the Court's screening standard are set forth in detail in the Court's MOSC. In summary, Plaintiff claims that on December 2, 2022, he was denied a breathing treatment and then Deputy Nash assaulted Plaintiff when escorting Plaintiff from the clinic.

**II. Discussion**

    **1. Count I**

Plaintiff alleges as Count I the denial of medical care and treatment in violation of the Fourteenth Amendment. (Doc. 1, at 5.) The Court found in the MOSC that Plaintiff raised these same claims regarding the December 2, 2022 incident in a prior case. *See Gilmore v. Neph*, Case No. 22-3316-JWL (D. Kan.). The Court in that case found that: Plaintiff was having breathing issues due to ineffective denture adhesive; the nurse on duty refused to discuss the issue of denture adhesive with Plaintiff; Plaintiff alleged that in August of 2022, the "Sheriff's Department" created an administrative policy preventing him from receiving a tube of "quality" denture adhesive (Plaintiff prefers Fixodent) twice a month at $5.00 per tube; the policy was directed at products containing petroleum, which apparently could be used to "melt" windows at the SCADF; the SCADF or Vital Core provides Plaintiff with denture adhesive that does not work as well as Fixodent; and Plaintiff alleged that the lack of preferred adhesive has caused him "continuous and ongoing physical pain, injury, and severe choking and breathing problems." *See* MOSC, Doc. 4, at 8–9 (citing Case No. 22-3316).

The Court found in the MOSC that Plaintiff's Complaint in the instant case fails to state a claim for relief, finding that:

> The Court also found that Plaintiff's claims regarding his preferred denture cream failed to state a claim regarding his medical care. Plaintiff was denied a breathing treatment when he was escorted to the clinic to complain that he could not breathe properly without his preferred denture cream. The denial of a breathing treatment under these circumstances does not show deliberate indifference by the medical staff. Plaintiff has failed to show that any defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.

Doc. 4, at 12.

Plaintiff's response fails to show good cause why this claim should not be dismissed for the reasons set forth in the MOSC.  Plaintiff continues to argue that he was denied a breathing treatment on December 2, 2022.  (Doc. 8, at 2.)  However, despite Plaintiff's allegations in his prior case, he now claims he needed a breathing treatment for pre-existing serious medical needs—asthma and sarcoidosis—and not due to his denture issues.  *Id*. at 3–4.

Plaintiff claims that in March/April 2022, Nurse Practitioner Audrey with Wellpath Medical prescribed chronic care breathing treatments for Plaintiff on an "as needed/on demand basis."  *Id*. at 3.  Plaintiff alleges that in August/September 2022, Vital Core took over clinic operations at SCADF and "many persons at jail were removed from chronic care diagnosis and taken off of medical treatments and prescription meds without being evaluated."  *Id*.  Plaintiff acknowledged in his Complaint that he was only prescribed breathing treatments "until Aug/Sept 2022 when many detainees were removed from chronic-care treatments."  (Doc. 1, at 4.)

Because he has now changed his factual allegations regarding the need for a breathing treatment, Plaintiff claims that "[e]verything previously stated in case 22-3316-JWL has no bearing on this claim."  (Doc. 8, at 22.)  In his Complaint in Case No. 22-3316, Plaintiff states that on December 2, 2022, Deputy Neph "arrived at Pod 1 segregation to escort this plaintiff to clinic for breathing issues due to deprivation of denture adhesive by clinic staff."  *Gilmore v. Neph*, Case No. 22-3316, Doc. 1, at 6.  Plaintiff states that on the way to the clinic, Plaintiff asked Neph "to advocate for denture adhesives."  *Id*.  In his Amended Complaint in Case No. 22-3316, Plaintiff states that:

> On December 2nd 2022 at approximately 8:30 P.M. Plaintiff Gilmore was in cell 1-04 MA in segregation.  At this time Plaintiff requested breathing treatment and denture adhesives due to breathing problems associated with being deprived use of dentures,

3

> due to issues with jail administration and Vital Core Mgmt. At 8:50 PM this plaintiff was placed in handcuffs, behind my back, with dentures in hand. Immediately Deputy Neph began verbal exchange with this plaintiff, by stating "If this trip was about dentures/denture adhesives issues, he would be locking me down with more segregation time." Plaintiff then provides verbal notice to Dep. Neph that this evening clinic visit was in fact specifically related to issues with breathing, due to prosthetic device deprivation. All reasonable inferences could be drawn from the fact that I had dentures in my hands, and showed them to him before being handcuffed at Pod 1 Section A entrance.

Case No. 22-3316, at Doc. 12, at 17–18.

Plaintiff alleged in his prior case that he was seeking a breathing treatment due to his denture issues, and he told Neph that the visit to the clinic was "in fact specifically related to issues with breathing due to prosthetic device deprivation." Plaintiff cannot now argue that Neph and the nurse were deliberately indifferent because they knew that he needed a breathing treatment due to his asthma—a condition for which his prescription was discontinued in August or September of 2022.

Plaintiff has failed to show that any defendant was deliberately indifferent to his medical needs. Plaintiff has failed to show that any defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference. Plaintiff has failed to show good cause why his claims in Count I should not be dismissed for failure to state a claim.

**2. Counts II and III**

Plaintiff alleges assault and battery by Deputy Neph as Count II, and a state law claim for intentional infliction of emotional distress as Count III. (Doc. 1, at 5–6.) The Court found in the MOSC that:

> As Plaintiff was advised in his prior case, his claim for assault and battery is not cognizable in a civil action. Regarding Plaintiff's

4

> claim of intentional infliction of emotional distress, the Court finds that it is well-settled that state law violations are not grounds for relief under § 1983. "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (citation omitted). This Court is not obliged to exercise supplemental jurisdiction over any state law claims, even if valid, given that Plaintiff's federal constitutional claims are subject to dismissal. *See* 28 U.S.C. § 1367(c)(3).

Doc. 4, at 12–13.

In his response, Plaintiff mentions mistreatment of a confined person under K.S.A. 21-5416 and the Kansas Tort Claims Act, and sets forth the elements for the crimes of battery and aggravated battery. (Doc. 8, at 33–34, 36.) Plaintiff also cites to the SCADF's written policies and operational objectives. *Id*. at 34–35. The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). Plaintiff has failed to show good cause why his state law claims in Counts II and III should not be dismissed for the reasons set forth in the MOSC.

Plaintiff has also failed to state a claim for excessive force. The Court dismissed Case No. 22-3316, finding that Plaintiff failed to state a claim of excessive force against Neph. *See* Doc. 4, at 11 ("While the conduct described by Plaintiff is far from commendable, it does not rise to the level of a constitutional violation."). The Court found that after video of the incident was reviewed, Plaintiff received disciplinary reports for battery on Neph. *Id*. at 8–9 (citing Case No. 22-3316); *see also Wilson v. Wilcox*, No. 14-cv-0421-MSK, 2018 WL 1304532, at *6 (D. Colo. March 13, 2018) ("Because the disciplinary determination is inconsistent with some of Mr. Wilson's allegations . . . the factual findings in the disciplinary determination control, both under

*Heck* and consistent with the doctrine of collateral estoppel.") (citing *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999)); *Havens v. Johnson*, 783 F.3d 776, 782–83 (10th Cir. 2015) (citing *Moore v. Mahone*, 652 F.3d 722, 725 (7th Cir. 2011) (pro se complaint's only basis for relief was that the plaintiff was the victim of an unprovoked assault, contrary to prison disciplinary board's findings)). The Court found in the MOSC that Plaintiff has not alleged wrongdoing that is objectively harmful enough to establish a constitutional violation based on excessive force. (Doc. 4, at 12.) Plaintiff has failed to show good cause why any excessive force claim should not be dismissed for failure to state a claim.

### 3. Count IV

Plaintiff alleges a failure to train by Vital Core as Count IV. (Doc. 1, at 7.) Plaintiff claims that "Vital Core has a policy and practice of failing to train against denial of medical care and deliberate indifference of the Plaintiff. Vital Core has a practice of failing to implement safeguards and procedures, and constitutional provisions of this Plaintiff." *Id*. The Court found in the MOSC that Plaintiff's failure to train claim also fails because he has not alleged sufficient facts to show a constitutional violation by an employee or a policy causally connected to such a violation.

Plaintiff argues in his response that "Vital Core Health Strategies aggressively marketed strategies to the Sedgwick County Sheriff Dept. on cutting costs and reducing expenses of medical, dental, psychiatric, and chronic care patients." (Doc. 8, at 40.) Plaintiff then concludes that "[a] plan [was] made to deliberately fail to train Vital Core staff on a number of issues regarding policies and practices to be implemented at this facility." *Id*. at 41. Plaintiff has failed to provide any factual support for his conclusory allegations.

"[A] failure-to-train claim may not be maintained . . . without a showing of a

constitutional violation by the allegedly un-, under-, or improperly-trained officer." *Valdez v. Macdonald*, 66 F.4th 796, n.14 (10th Cir. 2023) (citations omitted); *see also Estate of Burgaz v. Bd. of Cty. Comm'rs*, 30 F.4th 1181, 1189 (10th Cir. 2022) ("[T]o be held liable for either a failure-to-train or failure-to-supervise claim, an individual officer (or deputy) must have committed a constitutional violation.") (citations omitted); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) (stating that "failure to train claims, like their basic excessive force claim against the individual officers, requires a predicate showing that the officers did in fact use excessive force"). Plaintiff has failed to show a constitutional violation by any Vital Core staff and has failed to state a failure-to-train claim.

### 4. Plaintiff's Supplemental Response

Plaintiff filed a supplemental response, invoking jurisdiction under 42 U.S.C. § 1985, and citing cases dealing with conspiracies. *See* Doc. 9. Plaintiff cites to 42 U.S.C. § 1985(3), and claims he is in a protected class because he is civilly committed. *Id*. at 10.

Section 1985 deals with conspiracies to interfere with civil rights. *See* 42 U.S.C. § 1985. Plaintiff did not raise a conspiracy claim in his Complaint, and his bald allegation of a conspiracy in his response is insufficient to state a claim. Plaintiff fails to assert factual allegations in support of a conspiracy claim. To state a claim for conspiracy, Plaintiff must include in his complaint enough factual allegations to suggest that an agreement was made. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). A bare assertion of conspiracy, absent context implying a meeting of the minds, fails to raise a right to relief above the speculative level. *Id*. Here, Plaintiff provides no factual information whatsoever to demonstrate any type of agreement was made between anyone. Such conclusory allegations fail to state a plausible claim for relief.

Any claim under § 1985 also fails because Plaintiff has not shown discriminatory animus against him based on his membership in a protected class. *See Garcia v. Yniquez*, 2022 WL 2734636, at *2 (10th Cir. July 14, 2022) (unpublished). Causes of action under both sections (2) and (3) require a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015) (citations omitted); *see also Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) (a § 1985 claim lacking an allegation of "class-based or racial discriminatory animus" must fail)); *see also Chubb v. Brownback*, 2016 WL 5410615, at *7 (D. Kan. Sept. 28, 2016) ("To assert a plausible claim under § 1985(3), plaintiff must allege a conspiracy based on racial animus.") (citing *Jones*, 809 F.3d at 576). Plaintiff makes no such allegations, and he fails to state a plausible claim under § 1985.

### III.  Motions

Plaintiff filed a Motion for Court Ordered Competency Evaluation, asking this Court to order a competency examination for Plaintiff because some of the issues in his cases are "attributable to or exacerbated by the currently illegal civil commitment under cases 19CR1841 and 22CR190 at 18th Judicial District Court." (Doc. 14, at 1.) This case is being dismissed, and the Court does not order competency evaluations for ongoing state criminal proceedings. Plaintiff should raise any issues or concerns regarding his competency evaluation in his state criminal proceedings. The motion is denied.

Plaintiff also filed a "Motion, Response, and Supplemental Addendum and Motion for Equitable Sanctions/Transport Order" (Doc. 15). Plaintiff asks the Court to order the Sedgwick County Sheriff's Department to fly Plaintiff to Minnesota to allow Plaintiff to attend an in-person probate hearing and to remain in the "Martin County Sheriff Dept. custody until the

probate case is resolved." *Id*. at 1, 6.  Plaintiff alleges that the in-person court date is July 26, 2023.  *Id*. at 3.  Plaintiff again asks for a competency examination to "be performed while detained in Minnesota."  *Id*. at 6.  Plaintiff also asks for monetary sanctions to be imposed against the Sedgwick County Sheriff's Department.  *Id*.

The Court previously gave the Sedgwick County Sheriff an opportunity to respond and indicate whether or not Plaintiff would be allowed to participate in a zoom hearing in the probate case.  (Doc. 11.)  The Court noted that the hearing notice attached to Plaintiff's motion only provides for a zoom hearing on July 26, 2023, and states that the "hearing will not be in person at the courthouse." *Id*. at n.1 (citing Doc. 10–1.)  The Sheriff filed a response (Doc. 12) indicating that Plaintiff would be allowed to attend the hearing on July 26, 2023, but the Sheriff must first receive Notice from the Minnesota court regarding the hearing and instructions for access. (Doc. 12, at 1–2.) The Sheriff also provided contact information for where the Minnesota court should send the Notice.

Although Plaintiff continues to argue that he has provided the SCJ with notice of the hearing,[1] this Court's July 10, 2023 Order instructed Plaintiff that to the extent he wishes to participate in the zoom hearing on July 26, 2023, he should contact the Minnesota court and give them the following contact information to send a Notice of the hearing:

Sedgwick County Jail
Attn: Corporal Joshua Anderson
141 W. Elm St.
Wichita, KS 67203

(Doc. 13, at 1–2.)

The Court denies Plaintiff's motion and cautions Plaintiff that he should follow the instructions given to him by the Sheriff and the Court if he seeks to participate in the zoom

---

[1] In his supplemental response, Plaintiff states that "[t]his Plaintiff personally served (6) Notices upon the Sedgwick County Sheriff Dept."  (Doc. 9, at 12.)

hearing. The official notice for the hearing must come from the court in Minnesota, not from Plaintiff. The motion is denied.

## IV. Conclusion

Plaintiff has failed to show good cause why his claims should not be dismissed for the reasons set forth in the Court's MOSC. This matter is dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motions (Docs. 14, 15) are **denied.**

**IT IS FURTHER ORDERED** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated July 20, 2023, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE